DISTRICT OF OREGON
**FILED**
**September 24, 2026**
**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Nour Eddine Mouktabis,<br><br>Debtor. | Case No. 25-31941-dwh7<br><br>MEMORANDUM DECISION DISMISSING DEBTOR'S SANCTIONS MOTION[1] |

## I.! Introduction

In this chapter 7 case, debtor, Nour Mouktabis, has moved for automatic-stay-violation sanctions against 11 respondents: Malika Amarou, Baselane, Clackamas County Clerk, Daniel Duyck, Sandra Faber, Holly Hayman, Jeanne Huffman, Ricardo Menchaca, Brianna Morrison, and Thread Bank.[2]

---

[1] This disposition is specific to this contested matter. It may be cited for whatever persuasive value it may have.
[2] ECF No. 37.

Mouktabis alleges that the automatic stay of 11 U.S.C. § 362(a) was violated by (1) statements by lawyers for Amarou and Huffman at a state-court garnishment hearing, (2) Baselane and Thread Bank's withholding from Mouktabis of deposited funds, and (3) Amarou's recording of a real-property deed from Mouktabis to her.

The funds and real property at issue are not estate property. For that and other reasons set forth below, I will grant respondents' motions to dismiss the sanctions motion for failure to state a claim.

## II.! The sanctions motion

### *A.! Mouktabis's allegations*

As supplemented by Mouktabis's reply and supporting declarations, the sanctions motion alleges the following facts.

In May 2021, Mouktabis and Amarou were divorced in the Clackamas County, Oregon, Circuit Court. Before the judgment, real property that the parties call the "condo" was "the sole property of" Mouktabis. In the judgment, the condo was awarded to Amarou. Mouktabis appealed the judgment and deposited with the Clackamas County court administrator a deed from him conveying the condo to her.[3]

In April 2024, Mouktabis executed another deed, conveying the condo to his current spouse.[4]

[3] ECF No. 37 at 2–3; ECF No. 91 at 12.
[4] ECF No. 37 at 3.

After Mouktabis's appeal of the divorce judgment was dismissed, the divorce action and the deed to Amarou were transferred to the Washington County, Oregon, Circuit Court.[5]

Mouktabis opened an account with Baselane and Thread Bank "for his LLC" for the deposit of collected rents and security deposits.[6] The "last bank statement showing the funds remaining in the accounts" shows the accounts holder as Amana Ranch LLC.[7]

Amarou, represented by Duyck, brought an action—separate from the divorce—against Mouktabis in the Washington County court as No. 23CV20486, and she obtained a money judgment against him on May 8, 2025. To enforce it, Duyck issued writs of garnishment to Baselane and Thread Bank.[8] The bank issued a garnishee response stating that it held nonexempt funds of Mouktabis, and it issued a money order to Duyck. Before the petition was filed on June 8, 2025, Mouktabis filed a challenge to the garnishment issued to the bank.[9]

On June 2, 2025, in the divorce action, the Washington County court ordered the release of the deed to Amarou.[10]

---

[5] ECF No. 37 at 3.
[6] ECF No. 93 at 2 ¶ 3.
[7] ECF No. 93 at 2 ¶ 6, Ex. 2.
[8] ECF No. 37 at 4.
[9] ECF No. 37 at 5.
[10] ECF No. 37 at 3.

On June 8, 2025, Mouktabis filed his chapter 7 petition. The trustee is Huffman.[11]

After the petition was filed, Duyck deposited with the court the funds he had received from Thread Bank.[12] Before the garnishment challenge was heard on July 25, 2025, Duyck released the writ.[13]

On June 12, 2025, Amarou and her lawyer, Faber, filed the deed to Amarou for recording with the Clackamas County Clerk.[14] On July 1, 2025, Mouktabis "showed up at the condo . . . to inspect" it and found Amarou at the door with a locksmith changing the locks. Previously, Amarou "had no access to the condo."[15] Since then, Mouktabis has not had access to the condo.[16]

On July 28, 2025, a hearing on the garnishment challenge in No. 23CV20486 was held before Menchaca, a judge of the Washington County court.[17] At that hearing, Mouktabis argued that the automatic stay deprived the court of authority to retain the garnished funds, and Hayman and Duyck, representing Huffman and Amarou, respectively, urged Menchaca to "keep

[11] ECF No. 5.
[12] ECF No. 94 at 1 ¶ 2.
[13] ECF No. 37 at 5.
[14] ECF No. 37 at 3; ECF No. 93 at 4 ¶ 19.
[15] ECF No. 93 at 4 ¶ 21.
[16] ECF No. 93 at 4 ¶ 22.
[17] ECF No. 37 at 7.

the money in the coffins [*sic*] of the court for a time undetermined to which the judge agreed."[18]

Baselane and Thread Bank "seized" funds they possessed and "refused to reinstate the accounts established by [Mouktabis] for the purposes of collecting prepaid rents and security deposits." After Baselane, Thread Bank, and Morrison, a lawyer for Baselane and the bank, received notice of the bankruptcy filing, "they should have released the funds immediately, especially after all writs of garnishment have been released by their respective issuers." "To the extent that" Huffman and Hayman acted in concert with Morrison or had any influence on Thread Bank's "refusal to reinstate the funds," Huffman and Hayman should also be held in contempt.[19]

Respondents violated the automatic stay in the following ways:

- Amarou and Faber "transfer[red] ownership of the Condo."[20] The recording of the deed to the condo and Amarou's taking of possession of the condo resulted in loss of—
    - rental income in the amount of $2,500 per month beginning June 2025,
    - personal property and furniture left in the Condo estimated to be valued at around $11,000,
    - value of the property due to a lien in the amount of approximately $56,000 belonging to Amarou now attaching to the Condo,

[18] ECF No. 37 at 5.
[19] ECF No. 37 at 9.
[20] ECF No. 37 at 7.

    - o! ability to pay off delinquent property taxes which are accruing interest at a rate of 16%, and
    - o! ability to pay off delinquent HOA dues which are accruing interest.[21]

- •! Baselane, Thread Bank, Morrison, Duyck, Hayman, Huffman, and Menchaca "exert[ed] control over the Thread Bank accounts."[22]
- •! "To the extent that" Baselane, Thread Bank, Morrison, Duyck, Hayman, Huffman, and Menchaca "believe that the funds held by Thread Bank belong to Debtor in his personal property and are nonexempt, they have willfully violated the automatic stay by depriving Debtor of access to such funds and by exercising control over any of Debtor's property."[23]
- •! Baselane, Thread Bank, and Morrison "refuse to reinstate the rent collection funds . . . ."[24]
- •! Duyck, Hayman, Huffman, and Menchaca sought "to keep funds locked up in the coffins [*sic*] of the Washington County Circuit Court without first seeking leave from this court."[25]

*B.! Relief requested*

In the motion's opening paragraph, Mouktabis asks that this court hold respondents in contempt for willful violations of the automatic stay, order remedy for the contempt, and award him actual damages, costs, attorney fees, and punitive damages against respondents.[26] In the "relief sought" section at the end, he requests—

> (1) An order "voiding the transfer of ownership of the Condo as recorded on June 24, 2025"

[21] ECF No. 37 at 8 ¶¶ (2)–(6).
[22] ECF No. 37 at 8 (part III heading).
[23] ECF No. 37 at 8.
[24] *Id.*
[25] ECF No. 37 at 9.
[26] ECF No. 37 at 2.

(2) A money judgment against Amarou, Faber, and the Clackamas County Clerk for the damages Mouktabis suffered;

(3) An order releasing funds in the possession of the Washington County Circuit Court

(4) An order releasing funds in the possession of Thread Bank

(5) If the funds are no longer in the possession of Thread Bank, a money judgment against Baselane, Thread Bank, and "the attorneys" to compensate Mouktabis for "all funds lost"

(6) A money judgment against Baselane, Thread Bank, and "the attorneys" for "all interest lost and all interest incurred due to the violation"[27]

## III.! Procedural history

Mouktabis filed the sanctions motion on November 26, 2025.[28]

Respondents other than Menchaca filed responses by January 9, 2026.[29]

On January 30, 2026, Mouktabis filed a reply to the responses filed by respondents other than Menchaca.[30] On February 4, 2026, Mouktabis filed two declarations in support of the reply.[31]

On February 6, 2026, Menchaca filed his motion to dismiss the sanctions motion as to him.[32]

[27] ECF No. 37 at 10 ¶¶ (1)–(6).
[28] ECF No. 37.
[29] ECF Nos. 45, 52, 75–80.
[30] ECF No. 91.
[31] ECF Nos. 93, 94.
[32] ECF No. 95.

Mouktabis agreed in his January 30 reply and orally at the February 9, 2026, hearing to dismiss the sanctions motion as against the Clackamas County Clerk.[33] That dismissal was effected by minute order.[34]

## IV.! Jurisdiction and authority

The district court has exclusive jurisdiction over civil proceedings arising under title 11 of the U.S. Code.[35] Because the sanctions motion seeks to enforce the automatic stay of section 362(a), it asserts "a cause of action created or determined by a statutory provision of title 11" and is thus one "arising under" title 11.[36]

The district court has authority to refer,[37] and has referred,[38] to this court all bankruptcy cases and proceedings in this district. A motion for sanctions for violating the automatic stay is a core proceeding,[39] which this court may hear and determine.[40]

## V.! Principles

### *A.! Automatic stay*

The commencement of a case initiates the automatic stay of acts described in the eight paragraphs that were part of section 362(a) during the

---

33 ECF No. 93 at 13.
34 ECF No. 100.
35 28 U.S.C. § 1334(b).
36 Maitland v. Mitchell (*In re* Harris Pine Mills), 44 F.3d 1431, 1435 (9th Cir. 1995) (quoting Wood v. Wood (*In re* Wood), 825 F.2d 90, 96 (5th Cir. 1987)).
37 28 U.S.C. § 157(a).
38 LR 2100-2(a).
39 *See* Fortune & Faal v. Zumbrun (*In re* Zumbrun), 88 B.R. 250, 253 (B.A.P. 9th Cir. 1988).
40 28 U.S.C. § 157(b)(1), (2).

events at issue in the motion; a ninth paragraph became effective later.[41] Mouktabis does not specify which paragraphs he argues respondents violated. Because he represents himself, I will consider whether the facts he alleges state legally sufficient claims for violation of two of the paragraphs: section 362(a)(2), which stays the enforcement against the debtor and estate property of a prepetition judgment, and section 362(a)(3), which stays an act to obtain possession of or control over property of the estate or to obtain property from the estate.

I will not address section 362(a)(1), which stays the continuation of a prepetition proceeding to recover a claim against the debtor. For the purposes of that section, a judicial proceeding concludes when "the judicial decision is made"[42] or "at the moment the judge direct[s] entry of judgment . . . ."[43] Acts related to a judicial proceeding that occur before judgment are the province of section 362(a)(1), and those that occur after judgment are the province of section 362(a)(2). Here, the proceeding-related acts of which Mouktabis complains occurred after judgments in the proceedings: (1) acts related to Amarou's garnishment to collect her judgment in No. 23CV20486 and (2) her acts to record the deed to the condo awarded her in the divorce judgment and to take possession of the condo and its contents.

---

[41] Guiding and Establishing National Innovation for U.S. Stablecoins Act, Pub. L. No. 119-27 §§ 11(c)(1), 20, 139 Stat. 419, 457, 466 (2025).
[42] Soares v. Brockton Credit Union (*In re* Soares), 107 F.3d 969, 974 (1st Cir. 1997).
[43] Rexnord Holdings v. Bidermann, 21 F.3d 522, 528 (2d Cir. 1994).

I also will not address section 362(a)(6), which stays an act to collect, assess, or recover a prepetition claim against the debtor. Collection of a debt by enforcement of a judgment is the province of section 362(a)(2). The motion does not allege attempts to collect debts other than by judgment enforcement.

There does not appear to be any support in the facts Mouktabis alleges for claims under any of the other four paragraphs of section 362(a).

### *B.! Choice of law*

When a federal court must determine which state's law applies to an issue governed by state law, the court applies the choice-of-law rules of the forum state.[44] Because this court sits in Oregon, I apply Oregon's choice-of-law rules. Under Oregon Revised Statutes § 15.430(2), if no party raises the issue of applicability of foreign law to a noncontractual claim, the applicable law is that of Oregon. By contrasting Oregon law with foreign law, that statute implies that the legislature meant "foreign law" to be law other than that of Oregon, including the law of other states, not just that of foreign countries. Here, no party has argued that the law of a state other than Oregon governs the issues in this action, including garnishment procedures and the nature of Amarou's interest in the condo.

[44] Doe 1 v. Meta Platforms, Inc., 174 F.4th 1159, 1165 (9th Cir. 2026).

## VI.! Discussion

### *A.! Respondents' motions to dismiss the sanctions motion for failure to state a claim are properly before the court.*

Although Federal Rule of Bankruptcy Procedure 7012(b) does not apply to contested matters, nothing in the rules governing contested matters prohibits a court from deciding dispositive legal issues before holding an evidentiary hearing. At the February 9 hearing, I indicated that I saw the respondents' objection as raising potentially dispositive legal issues that could be decided without taking evidence, and Mouktabis did not object to my resolving those legal issues first.

For that reason, I will treat all respondents' objections to the sanctions motion (not just Menchaca's) as motions to dismiss for failure to state a claim, and in so doing I will consider only the facts alleged by Mouktabis.

### *B.! The motion fails to state a claim for violation of section 362(a)(3) by any respondent.*

In a chapter 7 case, property of the debtor becomes property of the bankruptcy estate,[45] of which the trustee is the representative.[46] The trustee has the power[47] and duty[48] to augment the estate, either by recovering estate property or by causing an entity in which the estate is an owner to recover property, indirectly benefitting the estate. Any estate property possessed by

[45] 11 U.S.C. § 541(a)(1).
[46] 11 U.S.C. § 323(a).
[47] *See* 11 U.S.C. §§ 323, 524(a).
[48] 11 U.S.C. § 704(a)(1).

the debtor must be surrendered to the trustee.[49] Because "the trustee has responsibility for estate property, . . . [t]he debtor has no right to possess or control estate property while it remains property of the estate."[50] When the debtor has "no right to possess or control" estate property, the debtor "cannot allege a plausible injury under § 362(a)(3)."[51]

Here, Mouktabis has not claimed an exemption in any property.[52] If he had an interest of any kind in the property at issue in the motion (the garnished funds, the funds in Thread Bank accounts, the condo, and the condo's contents), that interest became estate property, as to which he cannot allege a plausible injury under section 362(a)(3). If any of the respondents violated section 362(a)(3) by acting to obtain possession of or to control property of the estate or to obtain property from the estate, the violation would be remediable at the request of Huffman, not Mouktabis.

Because section 362(a)(3) addresses only property of or obtained from the estate, Mouktabis could not have stated a claim under that section even if the property at issue were entirely exempt.

In parts VI.C.3, VI.D.2, and VI.E.2 below, I set forth additional reasons why the motion fails to state a claim for relief under section 362(a)(3) as against particular respondents.

---

[49] 11 U.S.C. § 521(a)(4).
[50] Mwangi v. Wells Fargo Bank, N.A. (*In re* Mwangi), 764 F.3d 1168, 1178 (9th Cir. 2014).
[51] *See Mwangi*, 764 F.3d at 1178.
[52] ECF No. 1 Sched. C.

### C.! *I will dismiss the claims based on the July 28, 2025, state-court hearing.*

Mouktabis argues that the acts of Duyck and Hayman, on behalf of their clients, Amarou and Huffman, at the July 28, 2025, hearing violated the stay.

That hearing was in No. 23CV20486, the action by Amarou against Mouktabis that is separate from the divorce action. The hearing addressed Mouktabis's challenge to the garnishment writ Duyck had issued to Thread Bank. There, Mouktabis argued both that the judgment was void and unenforceable and that the funds the bank paid in response to the writ were not his property; he asked that the funds be returned to the bank accounts from which they were paid. Duyck and Hayman asked that Menchaca order the funds be retained by the state court. Mouktabis argues that "by presenting" at the hearing, "respondents," without specifying anyone in particular, "engaged in a collection action in a nonbankruptcy forum."[53]

#### 1.! The motion fails to state a claim for violation of section 362(a)(2) by Hayman or Huffman.

The only act on which Mouktabis bases his claims against Hayman and Huffman is Hayman's participation in the hearing on behalf of Huffman.

Only a party to a proceeding or the party's lawyer can enforce a judgment. Because Huffman is not a party to No. 23CV20486, nothing she did could have enforced the judgment in that action.

---

[53] ECF No. 91 at 10.

Mouktabis conceded that the owner of the Thread Bank account from which the funds were garnished is not him but the LLC. If he is correct, Huffman has an interest in causing the funds to be recovered by the LLC, in which the estate has a membership interest, rather than by Mouktabis. Even if it turns out that the garnished funds are property of Mouktabis, the funds are directly estate property. In either case, Hayman's request that the funds not be released carried out Huffman's trustee power and duty and was not enforcement of the judgment entered in that action.

2.! The motion fails to state a claim for violation of sections 362(a)(2) by Amarou at the hearing or by Duyck.

Because Duyck had withdrawn the writ of garnishment before the hearing, his request that the court retain the garnished funds could not have advanced Amarou's interest as garnishor. Instead, his request advanced her separate, although related, interest as a creditor of the estate; the estate would be augmented if Huffman recovers the garnished funds, either directly or indirectly through the LLC. His request was not enforcement of the judgment in that action.

3.! Even if Mouktabis were the estate representative, the motion would fail to state a claim that section 362(a)(3) was violated at the hearing.

Because the garnished funds were not Mouktabis's property, the funds did not become estate property, and Duyck's and Hayman's requests on behalf of their clients that the funds be retained by the court could not have

been an act to obtain possession of or control over estate property or to obtain property from the estate.

Also, the requests were acts to maintain the status quo—the court's possession of the garnished funds. "[M]ere retention of estate property after the filing of a bankruptcy petition does not violate § 362(a)(3) of the Bankruptcy Code."[54]

#### 4.! I will not find Menchaca in default.

Federal Rule of Civil Rule 55 applies to contested matters.[55] If a contested-matter movant's claim is not for a sum certain or a sum that can be made certain by computation, a default order must be sought by application to the court. The court may conduct hearings on the merits of the application.[56] A trial court's decision whether to enter a default judgment "is a discretionary one."[57] Factors that a court may consider in exercising that discretion include "the merits of plaintiff's substantive claim, . . . the sufficiency of the complaint, . . . and the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."[58]

If I were to consider Mouktabis's request at the end of his January 30 memorandum to be an application for entry of an order granting the sanctions motion, I would deny it; I hold in the remainder of this part VI.C

---

[54] City of Chicago, Ill. v. Fulton, 592 U.S. 154, 161–62 (2021).
[55] Fed. R. Bankr. P. 7055, 9014(c)(1).
[56] Fed. R. Civ. P. 55(b)(2).
[57] *See* Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).
[58] Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

that Menchaca is immune from a claim for monetary damages and that the sanctions motion's allegations against him do not otherwise state a claim for violation of the automatic stay.

### 5.! Menchaca has absolute judicial immunity from money damages for the claims asserted in the sanctions motion.

It is not clear that Mouktabis requests money damages from Menchaca. In the first paragraph on page 2 of the sanctions motion, Mouktabis asks for "damages, costs, attorney fees (if any), and punitive damages against respondents," of which Menchaca is one; but in the "relief sought" section on page 10, he asks for money damages only in paragraphs (2) and (6) from respondents other than Menchaca.

"[G]enerally, a judge is immune from a suit for money damages."[59] That immunity derives from the "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."[60] Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages.[61] There are only two types of actions for which a judge is not absolutely immune: (1) "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity,"[62] and (2) "actions, though judicial

---

[59] Mireles v. Waco, 502 U.S. 9 (1991).
[60] Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1872).
[61] *Mireles*, 502 U.S. at 11.
[62] *Mireles*, 502 U.S. at 11.

in nature, taken in the complete absence of all jurisdiction."[63] The factors determining whether a judge's act is judicial "relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."[64] "A judge will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"[65]

Oregon circuit courts are courts of general jurisdiction.[66] Garnishment is the process by which a judgment creditor invokes the authority of the court to acquire garnishable property of a debtor for application against the judgment.[67] Enforcement of a writ is subject to the authority of the court where the judgment was entered.[68] A debtor's challenge to a garnishment is filed with the court having authority over the writ.[69] A challenge must be adjudicated at a hearing before the court with authority over the writ.[70]

Menchaca, as a judge of the Washington County court, presided over the July 28 hearing on Mouktabis's garnishment challenge and adjudicated

---

[63] *Mireles*, 502 U.S. at 12.
[64] Stump v. Sparkman, 435 U.S. 349, 356 (1978).
[65] *Stump*, 435 U.S. at 356 (cleaned up).
[66] Or. Const. art. VII, § 9.
[67] Or. Rev. Stat. §§ 18.602, 18.605(1)(a).
[68] Or. Rev. Stat. § 18.610(1)(a).
[69] Or. Rev. Stat. § 18.700(2).
[70] Or. Rev. Stat. § 18.712(2).

the challenge by ordering the funds retained by the court clerk. Mouktabis does not allege that Menchaca's act was nonjudicial or that Menchaca acted or failed to act in the clear absence of all jurisdiction. The judgment Amarou sought to enforce by garnishment had been entered in that court; Mouktabis's challenge to the writ had been filed in that court; Menchaca acted (by not then sustaining the challenge) in his judicial capacity; and he did not do so in the complete absence of all jurisdiction.

Menchaca is immune from a claim for damages.

### 6.! The motion fails to state a claim for violation of sections 362(a)(2) or (3) by Menchaca.

It is also not clear that Mouktabis requests nonmonetary relief against Menchaca. Mouktabis requests "an order to remedy the contempt and/or violation" without specifying the nature of the requested remedy or whether the remedy would be against all respondents. In the "relief sought" paragraph on page 10, he requests in paragraph (3) "[a]n order releasing any and all funds currently in the possession of the Washington County Circuit Court," but he does not ask that the release order run against Menchaca.

The only act of Menchaca at issue is his accession to the requests of Duyck and Hayman that the garnished funds be retained by the court. Because those requests did not violate the stay, Menchaca's accession to them also did not violate the stay.

### D.! *I will dismiss the claims based on acts or omissions by Baselane, Morrison, and Thread Bank.*

#### 1.! The motion fails to state a claim that Baselane, Morrison, or Thread Bank violated section 362(a)(2).

None of Baselane, Morrison, or Thread Bank were parties or lawyers for parties in a proceeding against Mouktabis, so nothing they did could have enforced a judgment.

#### 2.! The motion fails to state a claim that Baselane, Morrison, or Thread Bank violated section 362(a)(3).

Because the owner of the account that Mouktabis opened at Thread Bank was the LLC, funds in the account at any time, including the funds paid on the garnishment writ, were never his property or property of the estate or in the possession of the estate.

Mouktabis argues that, because Thread Bank responded to the writ as though the funds it held were his property, the bank is judicially estopped to deny that the funds were his property.[71] Three nonexclusive factors “typically inform” a court’s decision whether to apply judicial estoppel: (1) whether a party’s later position is “clearly inconsistent” with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party’s earlier position; and (3) whether the party seeking to assert an

[71] ECF No. 91 at 4–5.

inconsistent position would derive an unfair advantage or impose an unfair detriment on the opponent if not estopped.[72]

It is true that Thread Bank's current position that the account was owned by the LLC is clearly inconsistent with its position in its garnishment response that the account was owned by Mouktabis. Nonetheless, the bank has not succeeded in persuading any court to accept that the account was owned by him. And because he acknowledges that the account was owned by the LLC, the bank would not derive an unfair advantage or impose an unfair detriment on Mouktabis if the bank were not estopped.

### *E.! I will dismiss the claims based on the condo-deed recordation.*

#### 1.! The motion fails to state a claim that Faber or Amarou violated section 362(a)(2).

Not every act by a nondebtor that has some indirect causal connection to a judgment in favor of the nondebtor constitutes enforcement of the judgment. For example, although a money-judgment creditor's issuance of a writ of garnishment would constitute enforcement of a judgment, if the creditor receives a check in payment from a garnishee in response to a writ of garnishment, the creditor's deposit of the check into its bank account would not constitute enforcement of the judgment. As between the creditor and the depositary, the power to deposit the check derives from the creditor's possession of the check payable or indorsed to the creditor. It is unimportant

---

[72] New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001).

to the depositary that the check was issued in response to a writ of garnishment issued to enforce a judgment.

So too here. As between Amarou and the recording officer, Amarou's power to record the deed derived from her possession of the deed, it being in recordable form, and her payment of the recording fee. It was unimportant to the recording officer that the cause of Amarou's receipt of the deed was the divorce judgment. Causing the deed to be recorded was not an act to enforce the divorce judgment.

2.! The motion fails to state a claim that Amarou or Faber violated section 362(a)(3).

Mouktabis alleges that Amarou and Faber violated the stay by "transferring ownership" of the condo, which I take to mean recording the deed, and by taking possession of the condo and its contents. The deed recordation is the only allegedly stay-violative act attributed to Faber, who acted on behalf of Amarou. Amarou is also alleged to have excluded Mouktabis from the condo and its contents.

Upon the filing of an Oregon marriage-dissolution judgment, the property division ordered in the judgment is "deemed effective for all purposes . . . ." "This transfer by judgment" has the effect of "a resulting trust in favor of the spouse to whom the property is awarded . . . ."[73] A resulting trust is a type of implied trust.[74] The interest of a trust beneficiary in

---

[73] Or. Rev. Stat. § 107.105(3).
[74] Wadsworth v. Talmadge, 450 P.3d 486, 491 (Or. 2019).

property is equitable title, and the interest of the trust's trustee is legal title.[75] In other words, upon the filing of the judgment, property that is awarded to a spouse becomes property of a resulting trust of which the awardee spouse is the beneficiary and thus the holder of equitable title to the property and the transferor spouse holds legal title as trustee of the trust.

Recording a deed serves to protect the grantee from the risk that the deed becomes "void as against a subsequent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance . . . is first filed for record . . . ."[76] But "an unrecorded conveyance is valid as between the grantor and the grantee . . . ."[77] And recording is not "an additional conveyancing formality."[78]

Here, the prepetition divorce judgment awarding the condo to Amarou was effective upon its filing and had the effect of a resulting trust in her favor, giving her equitable title and leaving Mouktabis with bare legal title. When he deeded the condo to his current spouse, also before the petition date, he gave up his bare legal title, so when he filed his petition in June 2025, he lacked any title. In any case, any interest in the condo he held when he signed the deed to Amarou was conveyed to her no later than June 2, 2025, before the petition date, when the circuit court ordered the deed to be

[75] Klamath Irrigation Dist. v. U.S., 227 P.3d 1145, 1161 (Or. 2010).
[76] Or. Rev. Stat. § 93.640(1).
[77] Muzzy v. Uttamchandani, 280 P.3d 989, 992 (Or. App. 2012).
[78] Nelson v. Hughes, 625 P.2d 643, 647 (Or. 1981).

released to her. The postpetition recordation of the deed gave Amarou only rights against parties other than Mouktabis. The recordation was not an act to obtain possession of or control over estate property or to obtain possession of property from the estate.

## VII.! Conclusion

I will dismiss the sanctions motion for failure to state a claim for violation of the automatic stay as against each of the respondents.

I will prepare a separate order, so none need be lodged.

###

cc: Nour Eddine Mouktabis