DISTRICT OF OREGON
FILED
September 30, 2026
Clerk, U.S. Bankruptcy Court

Below is an opinion of the court.

DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**Nour Eddine Mouktabis,**<br><br>Debtor. | Case No. 25-31941-dwh7<br><br>MEMORANDUM DECISION GRANTING TRUSTEE'S TURNOVER MOTION AND GRANTING IN PART TRUSTEE'S MOTION TO COMPEL[1] |

## I. Introduction

Jeanne Huffman, the chapter 7 trustee, has moved to require debtor, Nour Mouktabis, to turn over certain documents[2] and to answer questions she asked, through her lawyer, at the meeting of creditors.[3] Mouktabis

[1] This disposition is specific to this contested matter. It may be cited for whatever persuasive value it may have.
[2] ECF No. 34.
[3] ECF No. 70.

opposes both motions, in part by invoking his Fifth Amendment privilege against self-incrimination.

I will order Mouktabis to turn over the requested documents. I will sustain his privilege claim as to 29 of the meeting-of-creditors questions, overrule it with respect to one, and allow him 30 days to supplement his claims with respect to the remaining 66 questions.

## II. Procedural history

Mouktabis filed his petition on June 8, 2025.

At the first setting of the meeting of creditors on July 16, 2025, Mouktabis, under oath and without invoking the Fifth Amendment privilege, answered questions by Huffman and creditors related to information he had disclosed in his schedules and SoFA[4] That information includes his scheduled assets and liabilities, his employment, bank accounts, 3270 NW Susbauer Rd., Cornelius, Oregon, 4345 Summerlin Drive, West Linn, Oregon, which the parties refer to as the condo, Amana Ranch LLC, and funds garnished from a bank account at Thread Bank.[5]

Mouktabis invoked the Fifth Amendment privilege in an email he sent Huffman and her lawyer, Holly Hayman, on July 29, 2025.[6]

On October 31, 2025, Huffman moved to require Mouktabis to turn over to her six categories of recorded information: (1) proof of his Social

[4] ECF No. 70 at 4–5 ¶ 11.
[5] ECF No. 71-1 at 2 ¶ (5).
[6] ECF No. 92 at 1 ¶ 3.

Security number, (2) articles of incorporation of the LLC and any amendments, (3) operating agreement for the LLC and any amendments, (4) names and contact information for members of the LLC and documentation regarding transfer or acquisition of interests in the LLC, (5) the LLC's Chase Bank and Thread Bank statements from June 2023 and July 2025, and (6) documents relating to "Debtor's transfer of 3720 [*sic*, 3270] NW Susbauer Rd., Cornelius, Oregon] to Kaoutar Mouktabis in June of 2021 . . . .[7]

On November 21, 2025, Mouktabis filed his objection to the turnover motion.[8]

Mouktabis appeared and testified at a continued meeting of creditors on December 18, 2025, when he answered some questions and invoked the Fifth Amendment privilege in response to others.

On January 5, 2026, Huffman filed her motion to compel,[9] in which she requests that the court (1) compel Mouktabis's testimony and production of documents, overruling his invocation of the Fifth Amendment privilege, (2) compel him to answer questions asked at the continued meeting of creditors, and (3) find that he has waived any Fifth Amendment privilege that may be available due to his failure to timely invoke the privilege and his

---

[7] ECF No. 34; *see also* ECF No. 70 at 6 ¶ 15, final bullet point.
[8] ECF No. 35.
[9] ECF No. 70.

prior disclosures.[10] A transcript of the continued meeting is attached to Hayman's declaration in support of the motion to compel.[11]

On January 26, 2026, Mouktabis filed his response to the motion to compel,[12] in which he does not contest the facts alleged in the motion or the accompanying declaration of Hayman, including the accuracy of the transcript. He asks for a stay pending appeal should I overrule his privilege invocation.[13]

On February 2, 2026, Huffman filed her reply in support of the motion to compel.[14]

On February 4, 2026, Mouktabis filed his declaration in support of his response to the motion to compel.[15]

## III. Facts

The following facts are alleged by the parties in support of their positions on the motions and appear to be conceded or at least not to be contested.

On June 3, 2021, Mouktabis transferred the Susbauer property to Kaoutar Mouktabis.[16]

---

[10] ECF No. 70 at 2, 13.
[11] ECF No. 70 at 4–5 ¶ 11.
[12] ECF No. 85.
[13] ECF No. 86 at 7.
[14] ECF No. 89.
[15] ECF No. 92 at 3 ¶ 12.
[16] ECF No. 70 at 3 ¶ 2; ECF No. 85 at 5.

On January 31, 2023, a general judgment of contempt was entered against Mouktabis in the "contempt matter"[17]—the term the parties use for the remedial contempt action commenced on February 17, 2022, by Malika Amarou, Mouktabis's former spouse, against him in Washington County, Oregon, Circuit Court.

On March 15, 2023, the judgment was vacated and re-entered as an order of contempt.[18] In the order, the court found him in contempt for willfully failing in several respects comply with the judgment entered in his divorce from Amarou,[19] despite having the ability to comply.[20] The court found that he had drained a financial account that had been awarded to her and that he failed to reveal this information "in subsequent supersedes [*sic*] undertaking proceedings and the garnishment proceeding," and his concealment of those actions demonstrates he was aware that he was not permitted to drain the account.[21] The court also found that he "is receiving TANF [and] there has been no judicial review of the decision to award Husband [Mouktabis] TANF. Husband has ample means to support himself and his 18 year old daughter in a comfortable lifestyle without TANF."[22] The court struck from the draft order language that would have ordered

---

[17] ECF No. 70 at 3 ¶ 5.
[18] ECF No. 71-1 Ex. BBB.
[19] ECF No. 71-1 Ex. BBB at 2 ¶¶ 1.a.–1.c., at 3 ¶ 9.
[20] ECF No. 71-1 Ex. BBB at 2 ¶ 3.
[21] ECF No. 71-1 Ex. BBB at 2–3 ¶ 7.
[22] ECF No. 71-1 Ex. BBB at 5 ¶ 11.j.

Mouktabis to be confined,[23] saying instead, "Court to address remedial sanctions at sentencing hearing when Defendant [Mouktabis] reappears for court as ordered."[24]

Mouktabis alleges that the contempt matter is "pending sentencing."[25] And he claims to be "subject to a remedial contempt proceeding for nonpayment of child and spousal support where confinement is contemplated against Debtor as a remedial sanction."[26] At some unspecified time in 2025, he spent three weeks incarcerated by the Washington County Sheriff in connection with the contempt matter.[27] Since petitioning for dissolution of his marriage to Amarou in 2018, he has been the subject of criminal and quasi-criminal proceedings and investigations[28] for domestic violence, child abuse, financial fraud, and contempt related to financial obligations.[29] The state of Oregon has asked Mouktabis to sign an agreement acknowledging that information he provides may be used in enforcement actions, including contempt actions.[30] He is also "subject to an ongoing federal criminal investigation pertaining to his finances," separate from the contempt matter.[31] An investigator has informed him that he is being investigated for

---

[23] ECF No. 71-1 Ex. BBB at 6 ¶ 2.e.
[24] ECF No. 71-1 Ex. BBB at 6.
[25] ECF No. 92 at 2 ¶ 11.
[26] ECF No. 35 at 2 ¶ 7.
[27] ECF No. 35 at 2 ¶ 8.
[28] ECF No. 92 at 2 ¶ 6.
[29] ECF No. 92 at 2 ¶ 8.
[30] ECF No. 92 at 3 ¶ 13.
[31] ECF No. 35 at 2 ¶ 9.

fraud concerning some of his finances.[32] He has documentation of the investigation but should not be required to disclose it other than *in camera*.[33]

On May 19, 2023, Amarou initiated an action against Mouktabis and Kaoutar Mouktabis to avoid his transfer of the Susbauer property as a fraudulent transfer.[34]

From December 31, 2015, through January 1, 2024, Mouktabis lived at 3270 N.E. Susbauer Rd.[35]

On April 24, 2024, Mouktabis conveyed the condo to Soumia El Massaoudi, his spouse.[36]

Mouktabis alleges that, at the petition date, he held a 5-percent interest in the LLC, and he claims that the LLC is insolvent. That membership interest was not scheduled, but he referred to it and its lack of value in his objection to the turnover motion.[37]

On June 30, 2025, after the petition date, Mouktabis filed a complaint against Maria Clemens in Clackamas County, Oregon, Circuit Court to recover money. That court entered judgment in favor of Mouktabis and against Clemens on July 10, 2025. Mouktabis did not schedule any claim against Clemens.[38]

---

[32] ECF No. 92 at 3 ¶ 14.
[33] ECF No. 92 at 3 ¶ 15.
[34] ECF No. 70 at 3–4 ¶ 6.
[35] ECF No. 2 SoFA at 1 item 2.
[36] ECF No. 1, SoFA at 9–10, item 18.
[37] ECF No. 35 at 2 ¶¶ 3, 4.
[38] ECF No. 70 at 5 ¶ 13.

## IV. Arguments

### *A. Arguments by Huffman*

Huffman argues that Mouktabis has no reasonable cause to "apprehend a real danger of incarceration resulting from his testimony."[39] His only argument for a risk of prosecution is that "he may have had assets and did not pay his debt or obligations,"[40] which is an impermissible blanket invocation of the Fifth Amendment.[41] He "was already found in contempt and the Contempt Order was entered in 2023."[42] Thus, there is "no present reasonable cause for Debtor to apprehend a real danger of incrimination"[43] and "no risk of further criminal prosecution" in the contempt matter.[44] He does not identify or describe any possible incrimination other than in the contempt matter.[45]

Mouktabis has waived his right to assert the privilege by his "extensive prior disclosures" and his "fail[ure] to timely invoke any privilege."[46] He voluntarily disclosed his opinion of the value of the condo and his interest in the LLC in his objection to the turnover motion and his response to the motion to compel, thereby waiving the privilege as to the

[39] ECF No. 70 at 11.
[40] ECF No. 89 at 3:1–5.
[41] ECF No. 89 at 3:6–8.
[42] ECF No. 89 at 2:2–4.
[43] ECF No. 89 at 2:1–2.
[44] ECF No. 89 at 2:3–6.
[45] ECF No. 89 at 4:2–4.
[46] ECF No. 70 at 2.

existence of those assets and their value.[47] Disclosure of further details about the nature and value of those assets and his transfer of them cannot further incriminate him.[48]

The act-of-production privilege does not apply to LLC records that Mouktabis possesses in a representative capacity, and production of his personal records is privileged only if he demonstrates that the act of production would incriminate him. He waived any privilege not to disclose his membership interest in the LLC and his transfer of the Susbauer property by voluntarily disclosing those facts.[49]

### *B. Arguments by Mouktabis*

#### 1. Arguments in briefing

In briefing, Mouktabis argues that the documents Huffman seeks are statutorily excepted from turnover, and he invokes the privilege against self-incrimination. He alleges that "prior courts have already determined [that the LLC] is of inconsequential value . . . ."[50] He argues that he is not required by 11 U.S.C. §§ 521 or 542 to produce documents relating to the LLC because it is not estate property and the estate's membership interest is of inconsequential value to the estate.[51] (Except as otherwise noted, section references are to sections of title 11, the Bankruptcy Code.)

---

[47] ECF No. 89 at 5:7–12.
[48] *Id.*
[49] ECF No. 70 at 12.
[50] ECF No. 86 at 6.
[51] ECF No. 35 at 2.

In his opposition to the turnover motion, he acknowledges Huffman's reference to the Susbauer property sale,[52] and he refers to "a piece of real property sold by the Debtor over four years ago,"[53] so I take the "piece of real property" to mean the Susbauer property. He argues that he need not produce documents regarding that sale because the property is not estate property. He also argues that any claim to avoid the sale under Oregon Revised Statutes § 95.280(3) would be untimely. The same, he says, "applies to the Condo."[54] And if the condo transfer is void or voidable, it is "valued at or less than $300,000" and thus is entirely exempt under Oregon Revised Statutes § 18.395(1)(a).[55]

Mouktabis invokes the privilege against self-incrimination in the Fifth Amendment to the U.S. Constitution and Article I, section 12, of the Oregon Constitution "in light of the pending and/or anticipated criminal investigations and prosecutions targeting" him.[56] He alleges that he is "subject to a remedial contempt proceeding for nonpayment of child and spousal support where confinement is contemplated" against him as a remedial sanction; he has been incarcerated more than three weeks by the Washington County, Oregon, Sheriff as a result of the same contempt

---

[52] ECF No. 35 at 2 ¶ 5.
[53] ECF No. 35 at 3.
[54] ECF No. 85 at 5.
[55] ECF No. 86 at 6.
[56] ECF No. 35 at 3.

proceeding.[57] Amarou has instigated investigations against him about domestic violence, child abuse, financial fraud, and "contempt related to various financial obligations,"[58] and the contempt matter is the fourth such proceeding.[59] Although the contempt matter is currently "pending sentencing, it is far from over . . . ."[60] "Any financial information" he now provides would be used against him to increase his sentence and could also be "grounds for a new contempt proceeding altogether."[61]

He is subject to "an ongoing federal criminal investigation pertaining to his finances which is separate from the contempt proceeding."[62] He was recently contacted by an investigator informing him that he was being investigated for fraud concerning some of his finances.[63] He would provide documentation regarding that investigation "for the court's eyes only (i.e. in-camera) . . . ."[64]

None of his prior voluntary disclosures has been incriminating.[65] He relies on the act-of-production privilege to excuse his production of requested documents.[66]

---

[57] ECF No. 35 at 2 ¶¶ 7, 8.
[58] ECF No. 92 at 2 ¶ 8.
[59] ECF No. 92 at 2 ¶ 9.
[60] ECF No. 92 at 2–3 ¶ 11.
[61] ECF No. 92 at 3 ¶ 12.
[62] ECF No. 35 at 2 ¶ 9.
[63] ECF No. 92 at 3 ¶ 14.
[64] ECF No. 92 at 3 ¶ 15.
[65] ECF No. 85 at 4.
[66] ECF No. 85 at 6.

### 2. Arguments at meeting of creditors

The December 18, 2025, continued meeting of creditors occurred after Mouktabis filed his opposition to the turnover motion and before the motion to compel was filed. At the meeting, and while being examined under oath, he made several combined factual and legal arguments why the privilege against self-incrimination excuses him from answering certain questions, among which are several that he does not appear to have specifically repeated in his later filings.

Mouktabis said that whatever he says in the meeting-of-creditors examination or in the bankruptcy case about his finances could be used against him to, among other things, support a claim for criminal contempt for nonpayment of child and spousal support and other financial obligations imposed by the divorce decree.[67] A pending investigation into his finances has resulted in an indictment.[68] When he was asked to describe any criminal prosecution against him, he referred to having "made use of certain benefits in the past." Whatever information is revealed about his finances, including whether he had the ability to pay, and whether he was eligible for those benefits, can be grounds for criminal prosecution.[69] He has been contacted by an investigator who said he was investigating Mouktabis's finances, apparently in connection with an investigation into misuse of benefits.[70]

---

[67] ECF No. 71-7 Ex. G (Transcript) at 6:4–13, 6:21 – 7:3.
[68] Transcript at 7:12–15.
[69] Transcript at 8:9–21.
[70] Transcript at 8:22 – 9:4.

## V. Jurisdiction and authority

The district court has jurisdiction over the turnover motion and the motion to compel, which are civil proceedings arising in this case.[71]

The district court has referred to this court all bankruptcy cases and proceedings in this district.[72] The motions are core proceedings,[73] which this court may hear and determine.[74]

## VI. Principles

### *A. Meeting of creditors*

The United States trustee must convene a meeting of creditors,[75] at which the debtor must appear and submit to examination under oath by the case trustee and others.[76] The permissible examination subjects include the debtor's acts, conduct, or property; the debtor's liabilities and financial condition; and any matter that may affect estate administration.[77]

### *B. Privilege against self-incrimination*

#### 1. Federal Rule of Evidence 501; Fifth Amendment

The rules of evidence that apply in a bankruptcy case are the Federal Rules of Evidence.[78] Under Evidence Rule 501, in a federal action other than a civil action in which state law supplies the rule of decision, a claim of

---

[71] 28 U.S.C. § 1334(b).
[72] LR 2100-(2)(a)(1).
[73] 28 U.S.C. § 157(b)(2)(A), (E).
[74] 28 U.S.C. § 157(b)(1).
[75] 11 U.S.C. § 341(a).
[76] 11 U.S.C. § 343; Fed. R. Bankr. P. 2003(b)(1)(A).
[77] Fed. R. Bankr. P. 2004(b)(1); 11 U.S.C. § 343.
[78] Fed. R. Bankr. P. 9017.

privilege is governed by the common law unless federal law, including the U.S. Constitution, provides otherwise.

Here, the rules of decision are provided by federal law, sections of the Bankruptcy Code: as to the turnover motion, sections 521 and 542, and as to the motion to compel answers to questions at the meeting of creditors, section 343. Thus, his claim of privilege is governed by the Fifth Amendment to the U.S. Constitution, not Oregon law.

Under the Fifth Amendment's Self-Incrimination Clause, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ."

**2. Availability of the privilege**

The Self-Incrimination Clause applies to a civil proceeding if the testimony sought to be compelled could later be used as evidence against the witness in a criminal prosecution[79] or in a quasi-criminal proceeding, such as one for civil forfeiture.[80] The privilege is available when disclosure is compelled, testimonial, and incriminatory.[81] The privilege applies to "testimony that may incriminate the witness under either state or federal law."[82] The privilege "must be accorded liberal construction in favor of the right it was intended to secure."[83]

---

[79] Lefkowitz v. Turley, 414 U.S. 70, 77 (1973).
[80] *See* United States v. Ward, 448 U.S. 242, 251–52 (1980).
[81] Fisher v. U.S., 425 U.S. 391, 409 (1976).
[82] Federal Deposit Ins. Corp. v. Sovereign State Cap., Inc., 557 F.2d 683, 687 (9th Cir. 1977).
[83] Hoffman v. U.S., 341 U.S. 479, 486 (1951).

To make a valid claim of the privilege against self-incrimination, a witness "must be faced with 'substantial hazards of self incrimination,' . . . that are 'real and appreciable' and not merely 'imaginary and unsubstantial.'"[84] The right to assert the privilege "does not depend upon the likelihood, but upon the possibility of prosecution."[85]

The privilege extends not only to answers that would in themselves support a conviction "but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute" the witness[86] or that would constitute a "lead or clue to a source of evidence" of a crime.[87] The witness is not "required to prove the hazard in the sense in which a claim is usually required to be established in court . . . ."[88] The privilege excuses an answer that would establish even "a single incriminatory fact."[89] The witness need not point to a pending criminal investigation of the witness; the witness need only establish that answering questions would "the likelihood of incrimination . . . ."[90]

Whether a question creates the hazard that the answer would incriminate a witness cannot be established just by "[t]he witness's say-so

---

[84] United States v. Neff, 615 F.2d 1235, 1239 (9th Cir. 1980).
[85] *In re* Master Key Litig., 507 F.2d 292 (9th Cir. 1974) (citing Hoffman v. U.S., 341 U.S. 479, 486–87 (1951)); Isaacs v. U.S., 256 F.2d 654, 658 (8th Cir. 1958)).
[86] *Hoffman*, 341 U.S. at 486.
[87] Hashagen v. U.S., 283 F.2d 345, 348 (9th Cir. 1960).
[88] *Hoffman*, 341 U.S. at 487.
[89] *Hashagen*, 283 F.2d at 352.
[90] United States v. Rendahl, 746 F.2d 553, 556 (9th Cir. 1984).

. . . ."[91] "Where a question is innocuous on its face, a bare assertion of the privilege is not enough: the witness must come forward to shed some positive light tending to show its incriminating aspects."[92]

For a privilege claim to be sustained, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."[93] When appraising a claim of self-incrimination, a trial judge "'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'"[94] In other words, in determining whether a particular question "is innocuous and thus unprotected absent some positive disclosure by the witness of its hidden dangers," . . . the judge must "employ a large measure of his own intuition and basic legal instincts . . . ."[95] In doing so, the judge can and must view the privilege claim "in a different perspective than he would an ordinary disputed fact in a normal adversary proceeding; he should not confine his attention to and rest his conclusion simply upon the facts before him, but must draw heavily upon his own experience in weighing the please and deciding the issue."[96] If the judge

---

[91] *Hoffman*, 341 U.S. at 486.
[92] *Hashagen*, 283 F.2d at 350.
[93] *Hoffman*, 341 U.S. at 486.
[94] *Hoffman*, 341 U.S. at 487 (quoting *Ex parte* Irvine, 74 F.954, 960 (C.C.S.D. Ohio, 1896).
[95] *Hashagen*, 283 F.2d at 350.
[96] *Id.*

"decides from this examination of the questions, their setting, and the peculiarities of the case, that no threat of self-incrimination exists, it then becomes incumbent 'upon the defendant [witness] to show that answers to (the questions) might criminate him.'"[97] The witness must make "some positive disclosure . . . of [the question's] hidden dangers."[98] As noted by Judge Learned Hand—

> Obviously, a witness may not be compelled to do more than show that the answer is likely to be dangerous to him, else he will be forced to disclose those very facts which the privilege protects. Logically, indeed, he is boxed in a paradox, for he must prove the criminatory character of what it is his privilege to suppress just because it is criminatory. The only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it permits the suppression of competent evidence, nothing better is available.[99]

In the Supreme Court's 1951 decision in *Hoffman v. United States*, the Court sustained a privilege invocation, observing that "[i]n this setting it was not 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) *cannot possibly* have such tendency' to incriminate."[100]

---

[97] *Neff*, 615 F.2d at 1240.
[98] *Hashagen*, 283 F.2d at 350.
[99] *Neff*, 615 F.2d at 1240 (quoting United States v. Weisman, 111 F.2d 260, 262 (2d Cir. 1940)).
[100] *Hoffman*, 341 U.S. at 488 (emphasis in original) (quoting Temple v. Commonwealth, 75 Va. 892, 898 (1881)).

### 3. Waiver of the privilege

A witness's voluntary disclosure of a fact waives the privilege against self-incrimination "as to the details of that fact so long as they do not further incriminate, but where those details would so incriminate, the privilege is not waived."[101]

In a proceeding other than a prosecution against the witness, the witness "may 'pick the point beyond which he will not go,' and refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers sought may tend to further incriminate him."[102]

Huffman argues that Mouktabis has waived the Fifth Amendment privilege by failing to invoke it timely.[103] But the only sense in which she suggests that he has failed timely to invoke the privilege is that he did not do so in nonbankruptcy litigation or at the initial setting of the meeting of creditors.[104]

### 4. Procedures for assertion and resolution of claim of privilege

To support invocation of the privilege against self-incrimination, the witness's "[s]tatements under oath, in person or by affidavit, are necessary

---

[101] *Hashagen*, 283 F.2d at 352.
[102] United States v. Seifert, 648 F.2d 557, 561 (9th Cir. 1980) (quoting Shendal v. U.S., 312 F.2d 564, 566 (9th Cir. 1963)).
[103] ECF No. 70 at 2.
[104] ECF No. 70 at 3.

because the present penalty of perjury may be the sole assurance against a spurious assertion of the privilege."[105]

The Ninth Circuit has held that a trial court erred in overruling a witness's invocation of the act-of-production privilege without first examining the requested records at the witness's request.[106]

## VII. Discussion

### *A. Mouktabis has not waived the Fifth Amendment privilege to the extent argued by Huffman.*

#### 1. Mouktabis could not have waived his right to assert the Fifth Amendment privilege by his disclosures in litigation other than in this case.

A witness's waiver of the Fifth Amendment privilege "is limited to the particular proceeding in which the waiver occurs."[107] And even within a particular proceeding, "waiver at one stage of a proceeding is not a waiver of that right for other stages."[108]

Because a proceeding external to this bankruptcy case is not the same proceeding as this case, no statement by Mouktabis in a proceeding other than this case—including in state court either before or after the petition

---

[105] *In re* Morganroth, 718 F.2d 161, 170 (6th Cir. 1983).
[106] *In re* Grand Jury Subpoena, Dated Apr. 18, 2003, 383 F.3d 905, 910 (9th Cir. 2004). *See* United States v. Bodwell, 66 F.3d 1000, 1002 (9th Cir. 1995) (remanding for in camera hearing at which witness will be asked questions and court will determine privilege). *See* also Dole v. Milonas, 889 F.2d 885, 890 (9th Cir. 1989) (court may make in camera review of disputed documents).
[107] United States v. Licavoli, 604 F.2d 613, 623 (9th Cir. 1979).
[108] United States v. Trejo-Zambrano, 582 F.2d 460, 464 (9th Cir. 1978).

date—could have waived his right to invoke the Fifth Amendment privilege in this case.

#### 2. Mouktabis's prior voluntary disclosures in the bankruptcy case have been part of a single "particular proceeding."

A debtor's duties to provide the trustee with information are formally discrete; the debtor must complete and file the schedules and SoFA, surrender to the trustee recorded information relating to estate property, answer questions at the meeting of creditors, and comply with a court order to turn over or disclose to the trustee recorded information relating to the debtor's property or financial affairs. Nonetheless, those duties function together to enable the trustee to investigate the debtor's financial affairs[109] and expeditiously monetize estate property.[110] In that sense, those types of disclosures functionally constitute a single proceeding.

### *B. Mouktabis must produce the documents requested in the turnover motion.*

#### 1. Turnover is required by statute.

A debtor's duties to turn over recorded information to the trustee arise primarily under two statutes. Section 521(a)(4) requires a debtor to "surrender to the trustee . . . any recorded information, including books, documents, records, and papers, relating to property of the estate." And under section 542(e), "subject to any applicable privilege, after notice and a

---

[109] 11 U.S.C. § 704(a)(4).
[110] 11 U.S.C. § 704(a)(1).

hearing, the court may order . . . [a] person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee." Documents that are necessary to, or would aid the trustee in, the performance of those duties "relate" to estate property or the debtor's property or financial affairs and thus are subject to compelled turnover. And "debtor's property" includes property the debtor owned before the petition date, even if the debtor transferred the property before the petition date so it never became estate property. When the two statutes are read together, the trustee is entitled to all documents that relate to the debtor's prepetition property or financial affairs or to property of the estate.

In Mouktabis's opposition to the turnover motion, he argues that, other than proof of his Social Security number (which he appears not to seriously contest he must produce), the requested documents either do not relate to estate property or they relate to estate property of inconsequential value or benefit to the estate.[111] Neither a debtor's section 521(a)(4) obligation to turn over information to the trustee nor the court's section 542(e) turnover power contain any exception for information or property that is of inconsequential value or benefit to the estate.

The recorded information Huffman seeks in the turnover motion must be surrendered under section 521(a)(4) without court order because it is

---

[111] ECF No. 35 at 1.

"recorded information . . . relating to property of the estate," or it is subject to ordered turnover under section 542(e) because it is "recorded information . . . relating to the debtor's property or financial affairs."

**2. Turnover is not excused by the Fifth Amendment.**

Mouktabis also argues that compelled production of the requested documents would violate his privilege against self-incrimination.[112] He does not explain specifically how his production of the specifically requested documents would incriminate him.

The privilege against self-incrimination "protects an individual against forced production of personal papers and effects, at least to the extent that the act of producing the documents might serve as a basis for incriminating inferences."[113] The act of compelled production of documents "tacitly concedes the existence of the papers demanded and their possession or control" by the witness and the witness's "belief that the papers are those" demanded.[114] But a witness "may not claim the [Fifth] Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded."[115]

Because the privilege protects against forced production only of "personal" papers, the act-of-production privilege can be invoked only by the document's owner. Property of a chapter 7 bankruptcy debtor that is not

---

[112] ECF No. 35 at 1.
[113] *In re* Grand Jury Proceedings, 633 F.2d 754, 756 (9th Cir. 1980).
[114] Fisher v. U.S., 425 U.S. 391, 410 (1976).
[115] Baltimore City Dep't of Soc. Servs v. Bouknight, 493 U.S. 549, 555 (1990).

exempt becomes property of the estate.[116] Thus, a debtor has no act-of-production privilege not to produce a document that is property of the estate.[117] Here, Mouktabis does not argue that the recorded information Huffman seeks is not estate property.

The "historic function" of the privilege against self-incrimination protects "only the natural individual . . .," so the papers protected by the privilege "must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity."[118] Thus, the privilege is unavailable either to an "artificial organization" or "an individual acting in his official capacity on behalf of the organization"[119] to avoid producing entity records that are in the individual's possession "in a representative capacity, even if these records might incriminate him personally."[120] Mouktabis does not argue that he possess records of or about the LLC other than in a representative capacity.

The documents for which Huffman seeks turnover are either property of the estate or of the LLC, and in either case the privilege is unavailable.

### *C. The timing of the Susbauer and condo transfers and the condo's exemptibility do not excuse Mouktabis from*

[116] 11 U.S.C. § 541(a).
[117] McCarthy v. Arndstein, 266 U.S. 34, 41 (1924); *Ex parte* Fuller, 262 U.S. 91, 93–94 (1923); Johnson v. U.S., 228 U.S. 457, 458 (1913).
[118] Bellis v. U.S., 417 U.S. 85, 89–90 (1974).
[119] *Id.* at 90.
[120] *Id.* at 88.

***producing documents and answering questions about the transfers.***

Neither a trustee's statutory right to recorded information nor the permissible scope of the examination of a debtor at the meeting of creditors is limited to information about transactions that occurred within a specified period. The timing of the Susbauer and condo transfers, including whether avoidance actions would be time-barred, is thus irrelevant to Mouktabis's turnover and meeting-of-creditors-testimony obligations. And because information about both properties "relates" to property or financial affairs of Mouktabis, it is subject to turnover under section 542(e) even though neither property is estate property and the condo, if recovered, might be exemptible.

***D. The Fifth Amendment excuses Mouktabis from answering some, but not all, of the 101 questions as to which he invoked it at the December 18, 2025, meeting of creditors.***

Huffman seeks to compel Mouktabis's answers to 101 questions that Hayman asked in the continued meeting of creditors on December 18, 2025, and in response to which he invoked the Fifth Amendment. I will address the questions in four groups: (1) five rhetorical questions, (2) 29 questions that facially call for answers that are potentially incriminatory, (3) one question that calls for the details of a disclosure Mouktabis has made without invoking the Fifth Amendment, and (4) 66 questions that do not facially call for answers that are potentially incriminatory.

**1. Five questions are rhetorical.**

Five questions were phrased as questions, but they ask Mouktabis to confirm information already known to Hayman and thus serve to convey information to him, rather than to seek information from him. I need not consider whether answers to those questions could have been incriminating, and I will not require answers.

The five questions are—

(1) Do you understand that you're required to disclose financial information in order to receive your discharge?[121]

(2) You understand that you're not going to be able to continue to pursue these arguments, to the extent that you invoke the Fifth Amendment?[122]

(3) Your bankruptcy statements disclose that you transferred property to this person [Soumia El Massaoudi] in 2024; is that correct?[123]

(4) Do you understand that claims arising before you filed for bankruptcy are property of the bankruptcy estate?[124]

(5) Do you understand that all claims arising before your bankruptcy was filed is property of your bankruptcy estate?[125]

---

[121] Transcript at 12:16-18.
[122] Transcript at 15:20–22.
[123] Transcript at 22:3–5.
[124] Transcript at 27:20–22.
[125] Transcript at 30:15–17.

### 2. Twenty-nine questions are facially potentially incriminatory.

As to 29 questions, it is evident from their implications, in the settings in which they are asked, that responsive answers might be dangerous because injurious disclosure could result, and the hazard of self-incrimination is substantial, real, and appreciable, not merely imaginary and unsubstantial, so answers are excused by the Fifth Amendment. I will address the questions in seven groups according to their topics: LLC membership transfers, LLC's finances, the Susbauer property, the condo, personal finances, taxes, and Maria Clemens.

#### ***(a) LLC membership transfers***

Mouktabis was asked three questions about prepetition transfers of membership interests in the LLC. They are—

> (1) When did you transfer membership interests to the other members of the LLC?[126]
>
> (2) What value was exchanged when those parts [*sic*, parties] were given an interest in the LLC?[127]
>
> (3) Did you receive any value in exchange for your guarantee [*sic*, granting] of membership interest to third parties related to the LLC?[128]

Section 152 of title 18, U.S. Code, criminalizes certain acts related to a bankruptcy case. Under section 152(2), it is a crime for a person to knowingly and fraudulently make a false oath or account in or in relation to any

---

[126] Transcript at 15:3–4.
[127] Transcript at 15:6–7.
[128] Transcript at 15:9–11.

bankruptcy case; under section 152(3), it is a crime for a person to knowingly and fraudulently make a false declaration, certificate, verification, or statement under penalty of perjury in or in relation to a bankruptcy case; and under section 152(7), it is a crime for a person to knowingly and fraudulently transfer or conceal any of the person's property in contemplation of a bankruptcy case by or against the person or with the intent to defeat the provisions of the Bankruptcy Code. So an omission from or false statement in a debtor's schedules or SoFA, both of which must be made under oath, can be an element of a violation of sections 152(2) or (3), and a debtor's prepetition transfer of property can be an element of a violation of section 152(7).

Bankruptcy schedules must be accompanied by a declaration under penalty of perjury that the schedules are true and correct.[129] A SoFA asks five questions about prepetition property transfers, the broadest of which is question 18: "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?"

It does not matter whether Hayman, when questioning Mouktabis, had in mind potential criminal liability under section 152, as opposed to a potential civil fraudulent-transfer claim. If he had answered that he had transferred membership interests shortly before the petition date, that admission could be used against him in a future prosecution under

---

[129] Fed. R. Bankr. P. 1008; Official Form 106Dec; Official Form 107 part 12.

section 152. It would not be enough to prove guilt, but it would establish one of the elements (the transfer) and, by revealing the time of the transfer, might provide circumstantial evidence of the specific-intent element.

#### *(b) LLC's finances*

Mouktabis was asked, "Does the LLC owe you personally any money?"[130]Mouktabis was required to disclose in his asset schedule whether any debts were owing to him.[131] He disclosed none.[132] By asking him whether the LLC owes him any money, Hayman was effectively challenging the accuracy or completeness of his asset schedule by asking whether it was correct—specifically, whether he correctly did not disclose any debts owed him by others. If at the petition date the LLC owed him any money, his failure to disclose that asset could be an element of violations of sections 152(2) or (3).

#### *(c) Susbauer property*

Mouktabis was asked 11 questions asked about a prepetition transfer of the Susbauer property. They are—

(1) Did you previously own the Susbauer property?[133]

(2) When did you purchase it?[134]

(3) And how much did you buy it for?[135]

---

[130] Transcript at 18:8.
[131] Fed. R. Bankr. P. 9009(a); Official Form 106A/B items 28, 30, 33, 34.
[132] ECF No. 1 Sched. A/B items 28, 30, 33, 34.
[133] Transcript at 19:2–3.
[134] Transcript at 19:5.
[135] Transcript at 19:7.

(4) Did you transfer the Susbauer property to your sister, Cutter Matilis [*sic*, Kaoutar Mouktabis]?[136]

(5) When did you transfer the property to her?[137]

(6) Why did you transfer the property to her?[138]

(7) At the time that you transferred the Susbauer property to your sister, was there a mortgage against the property?[139]

(8) [H]ow much money did she pay you for the property?[140]

(9) [D]id she actually pay you money for the property?[141]

(10) What proof of payment can you provide that you received money from your sister in exchange for your interest in the property?[142]

(11) Do you have any role related to the Susbauer property as of the petition date?[143]

Mouktabis disclosed in his SoFA that he lived at the Susbauer address through January 1, 2024, which is within two years before the petition date. For reasons discussed in part VII.D.2(a) above, questions about prepetition property transfers are facially potentially incriminatory.

[136] Transcript at 19:21–22.
[137] Transcript at 19:24.
[138] Transcript at 20:1.
[139] Transcript at 20:3–5.
[140] Transcript at 20:7–8.
[141] Transcript at 20:10–11.
[142] Transcript at 20:13–15.
[143] Transcript at 20:17–18.

#### *(d) Condo*

In three questions, Mouktabis was asked about a prepetition transfer of the condo. They are—

> (1) Why did you transfer the property [the condo at 4345 Summerlin, West Linn, Oregon] to this person [Kasimia Alvosodi [*sic*, Soumia El Massaoudi]]?[144]
>
> (2) Who is this person?[145]
>
> (3) Did you receive any money in exchange for the transfer of the condo in 2024?[146]

For reasons discussed in part VII.D.2(a) above, questions about prepetition property transfers are facially potentially incriminatory. Although the SoFA disclosed Mouktabis's transfer of the condo to El Massaoudi, answering questions about Mouktabis's motivation for the transfer and consideration he received for it might show that he made the transfer with fraudulent intent and in anticipation of bankruptcy, satisfying elements of a violation of section 152.

#### *(e) Personal finances*

Mouktabis was asked, "[d]o you have any other bank accounts [than the scheduled account with Chase Bank] in your name personally?"[147]

---

[144] Transcript at 22:7–8.
[145] Transcript at 22:10.
[146] Transcript at 22:24–25.
[147] Transcript at 18:13–16.

A debtor's bank accounts must be scheduled.[148] Mouktabis scheduled only an account with Chase.[149] For the reasons described in part VII.D.2(b)VII.D.2(b) above, a question that effectively challenges the accuracy or completeness of schedules is facially potentially incriminatory.

##### *(f) Taxes*

In six questions, Mouktabis was asked about his income taxes. They are—

(1) When was the last time you filed a tax return with the state of Oregon?[150]

(2) When was the last time you filed a federal tax return?[151]

(3) Do you currently owe taxes?[152]

(4) You do not list taxing authorities as creditors in your bankruptcy; is that correct?[153]

(5) Have you filed taxes for the year that you reported for the sale of the Susbauer property?[154]

(6) Do you owe federal or state taxes as a result of the sale of the Susbauer property?[155]

I infer from the third question that Mouktabis was asked whether he owed taxes as of the petition date and from the fourth question that he was asked whether he was correct in listing no taxing authorities as creditors.

---

[148] Official Form 106A/B item 17.
[149] ECF No. 1 at 16 Sched. A/B item 17.
[150] Transcript at 26:13–14.
[151] Transcript at 26:16–17.
[152] Transcript at 26:19.
[153] Transcript at 26:21–22.
[154] Transcript at 26:24–27.
[155] Transcript at 27:2–3.

Under Oregon law, it is a crime to intentionally evade any tax-law requirement, including to pay a tax or file a return,[156] and it is a federal crime to willfully fail to file a required federal tax return or to fail to pay a federal tax.[158] So answers to all but the fourth of those questions could establish elements of those offenses, and because Mouktabis did not schedule any tax debt,[159] the fourth question challenged the accuracy or completeness of the schedules, an element of a violation of 18 U.S.C. § 152(2) or (3).

#### *(g) Maria Clemens*

In four questions, Mouktabis was asked about Maria Clemens. They are—

> (1) So you filed a complaint and a stipulated judgment in Clackamas County Circuit Court after your bankruptcy case was filed against Maria Clemmons [*sic*, Clemens] . . . for breach of contract for $7,000. Who is Maria Clemmons [*sic*, Clemens]?[160]
>
> (2) What contract was breached?[161]
>
> (3) When was that contract entered?[162]
>
> (4) What happened after June 8th that you're seeking recovery for?[163]

I infer that these questions were designed to determine whether Mouktabis's claim against Clemens had accrued before the petition date,

---

[156] Or. Rev. Stat. §§ 314.075, 314.991(2).
[158] 26 U.S.C. § 7203.
[159] ECF No. 1 Sched. E/F.
[160] Transcript at 27:9–13.
[161] Transcript at 27:15–16.
[162] Transcript at 27:18.
[163] Transcript at 30:8–9.

making it estate property. He did not include in his asset schedule or SoFA any claim or litigation against Clemens. So these four questions challenge the accuracy or completeness of the schedules or SoFA.

#### 3. One question calls for the details of a prior voluntary disclosure, so it must be answered.

Mouktabis was asked, "[i]n 2024, you recorded a deed transferring the property [the condo] to . . . Kasimia Alvosodi [*sic*, Soumia El Massaoudi]. . . . Is that correct?"[164]

Mouktabis's transfer of the condo to El Massaoudi was disclosed in the SoFA.[165] This question, asking whether that transfer was memorialized in a recorded deed, asks about the details of the voluntarily disclosed transfer. He must answer.

#### 4. Sixty-six questions do not facially call for answers that are potentially incriminatory

As to 66 questions, it is not evident from the implications of the questions, in the settings in which they are asked, that responsive answers or explanations why they cannot be answered might be dangerous because injurious disclosure could result. In other words, the questions do not facially call for answers that are potentially incriminatory—they are innocuous—and Mouktabis has not pointed to contextual information demonstrating that truthful answers might incriminate him, so he must answer these questions

[164] Transcript at 21:22 – 22:2.
[165] ECF No. 1 at 54, SoFA item 18.

unless he is prepared to set "the door . . . a little ajar,"[166] by divulging some information suggesting that there is a substantial risk that a truthful answer would incriminate him.

I will address the questions in 10 groups according to their topics: the LLC's formation, its members, Mouktabis's nonmember role in the LLC, the LLC's business, the LLC's finances, garnishment from the LLC's bank account, the Susbauer property, the condo, personal finances, and taxes.

***(a) LLC's formation***

Mouktabis was asked two innocuous questions about the LLC's formation. They are—

(1) When was the LLC created?[167]

(2) Did you, yourself, create the LLC?[168]

***(b) LLC members***

Mouktabis was asked four innocuous questions about the LLC's members. They are—

(1) Your bankruptcy schedules disclose an interest in a LLC. Is that Amana Ranch?[169]

(2) When the LLC was created, were you the sole member of the LLC?[170]

(3) If not, who were the other members of the LLC when it was established?[171]

---

[166] *See* text accompanying note 99.
[167] Transcript at 14:16.
[168] Transcript at 14:18.
[169] Transcript at 13:3–4.
[170] Transcript at 14:20–21.
[171] Transcript at 14:23-24.

(4) [W]ho are the members of the LLC now?[172]

### *(c) Mouktabis's nonmember role in LLC*

Mouktabis was asked three innocuous questions about his nonmember role in the LLC. They are—

(1) As of the petition date, which is . . . June 8, 2025, what was your role in Amana Ranch LLC?[173]

(2) Are you the manager of the LLC?[174]

(3) Are you a signatory on any of the LLC's bank accounts?[175]

### *(d) LLC's business*

Mouktabis was asked two innocuous questions about the LLC's business. They are—

(1) Is the LLC still active and operating?[176]

(2) Is the LLC currently licensed to act as a property manager in the state of Oregon[177]

(3) Was the LLC ever licensed to act as a property manager in the state of Oregon?[178]

(4) [W]as the LLC operating as of the petition date, which is, again, June 8, 2025?[179]

---

[172] Transcript at 15:1.
[173] Transcript at 13:11–16.
[174] Transcript at 13:24.
[175] Transcript at 16:3–4.
[176] Transcript at 14:1.
[177] Transcript at 14:4–5.
[178] Transcript at 14:7–8.
[179] Transcript at 14:13–14.

### *(e) LLC's finances*

Mouktabis was asked 17 innocuous questions about the LLC's finances. They are—

(1) As of the petition date, what were the assets of the LLC?[180]

(2) You previously testified that the LLC has bank accounts at Chase Bank and Thread Bank. Does the LLC have any other bank accounts?[181]

(3) Where did the funds in the LLC bank accounts come from?[182]

(4) Regarding the funds held in the Washington County Circuit County court that were garnished from Thread Bank, what were the source of those funds?[183]

(5) You stated, in your objection to the garnishment in Washington County court, that those funds that were subject to the garnishment that were held in Thread Bank were security deposits. Who were those security deposits from?[184]

(6) What property were those security deposits related to?[185]

(7) If so, where are those funds now?[186]

(8) [H]ow have those funds been spent?[187]

---

[180] Transcript at 15:17–18.
[181] Transcript at 15:24 – 16:1.
[182] Transcript at 16:6–7.
[183] Transcript at 16:16–19.
[184] Transcript at 16:21–25.
[185] Transcript at 17:2–3.
[186] Transcript at 17:8.
[187] Transcript at 17:10.

(9) As of the petition date, was the LLC a party to any ongoing contract or lease agreement?[188]

(10) If so, what were the terms of any of those contracts?[189]

(11) As of the petition date, did any party owe money to the LLC?"[190]

(12) As of the petition date, what were the liabilities of the LLC?[191]

(13) How did the LLC incur those liabilities?[192]

(14) Does the LLC have any trade creditors or vendors?[193]

(15) Who are the LLC's creditors?[194]

(16) Does the LLC have any employees?[195]

(17) Have you ever received any money from the LLC?[196]

***(f) Garnishment from LLC's account***

Mouktabis was asked four innocuous questions about the garnishment from the LLC's bank account. They are—

(1) Were any funds garnished from the LLC's bank account prior to the bankruptcy filing?[197]

---

[188] Transcript at 17:12–13.
[189] Transcript at 17:15–16.
[190] Transcript at 17:18–19.
[191] Transcript at 17:21–22.
[192] Transcript at 17:24.
[193] Transcript at 18:1–2.
[194] Transcript at 18:4.
[195] Transcript at 18:6.
[196] Transcript at 18:10–11.
[197] Transcript at 16:9–10.

(2) Which accounts were garnished?[198]

(3) [H]ow much was garnished?[199]

(4) Were any of the funds garnished from the LLC's bank accounts returned?[200]

### *(g) Susbauer property*

Mouktabis was asked seven innocuous questions about the Susbauer property. They are—

(1) Did you ever live at the Susbauer property?[201]

(2) Did you ever consider the Susbauer property to be your residence?[202]

(3) If so, when was the Susbauer property your residence?[203]

(4) [H]ow was the Susbauer property awarded in your divorce with Malika Amaro [*sic*, Amarou]?[204]

(5) Do you know, are there tenants currently on the property?[205]

(6) Are there any lease agreements related to the property?[206]

(7) Is Amana Ranch LLC involved relating to the property in any way?[207]

---

198 Transcript at 16:12.
199 Transcript at 16:14.
200 Transcript at 17:5–6.
201 Transcript at 19:9–10.
202 Transcript at 19:12–13.
203 Transcript at 19:15–16.
204 Transcript at 19:18–19.
205 Transcript at 20:20–21.
206 Transcript at 20:23–24.
207 Transcript at 21:1–2.

### ***(h) Condo***

Mouktabis was asked 16 innocuous questions about the condo. They are—

(1) You owned the condo, and then it was awarded to Malika Amaro [*sic*, Amarou] in the divorce proceeding; is that correct?[208]

(2) Did Amana Ranch LLC ever have an interest in the condo?[209]

(3) How does disclosure of this person [Kasimia Alvosodi [*sic*, Soumia El Massaoudi]], your relationship with this person, implicate any of your contempt or other criminal proceedings? I'm asking for your relationship to her.[210]

(4) So your invocation of the Fifth Amendment is related to the contempt proceedings related to your prior divorce decree; right? I'm asking who this person is.[211]

(5) Did you ever live at the condo?[212]

(6) When did you reside at the condo?[213]

(7) Did you ever rent the condo to any third party?[214]

(8) To who did you rent the condo?[215]

(9) When did you rent the condo?[216]

---

[208] Transcript at 21:13–17.
[209] Transcript at 21:18–19.
[210] Transcript at 22:12–15.
[211] Transcript at 22:18–21.
[212] Transcript at 23:5–6.
[213] Transcript at 23:8.
[214] Transcript at 23:13–14.
[215] Transcript at 23:16.
[216] Transcript at 23:18.

(10) [D]o any of the tenants of the condo owe you any money?[217]

(11) Do you owe any tenants of the condo any money?[218]

(12) Do you believe that you have an ownership interest in the condo now?[219]

(13) Who do you believe is the current owner of the condo?”[220]

(14) [W]ho should the owner of the condo be, if different?[221]

(15) Do you believe the trustee has the ability to sell the condo?[222]

(16) Why or why not?[223]

***(i) Personal finances***

Mouktabis was asked nine innocuous questions about personal finances. They are—

(1) At the first meeting of creditors held on June 16, 2025, you indicated that you were employed. Are you still employed?[224]

(2) In your bankruptcy schedules . . . you list Katar [*sic*, Kaoutar] Mouktabis as a creditor, with the claim for $13,000. Who is Katar [*sic*, Kaoutar] Mouktabis?[225]

---

[217] Transcript at 23:20–21.
[218] Transcript at 23:12–13.
[219] Transcript at 25:15–16.
[220] Transcript at 25:18–19.
[221] Transcript at 25:21–22.
[222] Transcript at 25:24–25.
[223] Transcript at 26:2.
[224] Transcript at 12:21–23.
[225] Transcript at 33:10–13.

(3) [W]hy do you owe Katar [*sic*, Kaoutar] Mouktabis money?[226]

(4) [Y]ou list Mahawk Singal [phonetic] [*sic*, Mahak Singhal] . . . as a creditor, with a claim of $2,250. Who is this person?[227]

(5) Why does this person owe you money?[228]

(6) Do you owe this person money, or is it Amana Ranch LLC that owes this person money?[229]

(7) Again, in your schedules, you list Andrew Newsom [phonetic] as a creditor. Who is Andrew Newsom?[230]

(8) And why do you owe Andrew Newsom money?[231]

(9) Are your wife and daughter living with you?[232]

I take the sixth question to have been intended to ask why Mouktabis owes money to Singhal, not vice-versa.

**5. Mouktabis has not provided the required positive disclosure of the questions' hidden dangers.**

As support for his privilege invocation, Mouktabis argues that answers could incriminate him in pending or future contempt proceedings for nonpayment of child and spousal support, and he implies that he could be accused of improper use of benefits. He does not identify or produce the court order he claims to have been charged with not following, leading to the

226 Transcript at 34:2.
227 Transcript at 34:4–8.
228 Transcript at 34:10.
229 Transcript at 34:12–13.
230 Transcript at 34:16–17.
231 Transcript at 34:19.
232 Transcript at 34:25 – 35:1.

contempt motion. Huffman says that "adjudication of the Contempt Matter is complete and there is no realistic or reasonable threat of further incrimination for failure to pay his domestic support obligation," but she offers no specific proof of that allegation.[233]

The failure to support a child is a crime under Oregon law,[234] and Oregon law permits criminal prosecutions as well as civil-coercive proceedings for disobedience of a court order.[235] Although Mouktabis does not specify the benefits he has received and that might be the subject of investigation, the contempt order refers to him receiving "TANF," an initialism for Temporary Assistance for Needy Families, a federally funded but state-administered benefits program.[236] Oregon law makes it unlawful for a person knowingly to obtain for the benefit of the person or another person any public assistance to which the person or other person is not entitled under Oregon law by means of any false representation or fraudulent device or failure to notify the state Department of Human Services of the receipt or possession of property or income that affects the eligibility for assistance.[237]

---

233 ECF No. 89 at 3:15–17.
234 Or. Rev. Stat. § 163.555.
235 Or. Rev. Stat. §§ 33.015(3), (4) (distinguishing punitive contempt from remedial contempt); 33.065 (authorizing criminal proceedings for contempt of court).
236 Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, title I §§ 101–16 (1996); Or. Admin. Rule § 137-055-1020, 461-195-0601.
237 Or. Rev. Stat. § 411.630(1).

Doing so is a state crime.[238] Also, under 18 U.S.C. § 1001(a)(2), it is a federal crime to knowingly and willfully make any materially false statement or representation "in any matter within the jurisdiction of the executive . . . branch of the Government of the United States . . . ." A false statement to a state agency that receives federal support and is subject to federal regulation involves a matter within executive-branch jurisdiction,[239] making it a federal crime. A false statement is with the jurisdiction of the executive branch if is concerns the "authorized function of any agency or department," rather than "matters peripheral to the business of that body." An agency or department has jurisdiction in that sense "when it has the power to exercise authority in a particular situation."[241] To support jurisdiction under section 1001(a), there must be "a direct relationship . . . between the false statement and an authorized function" of the agency or department.[243] A federal program established to provide federal funds for states to pay additional unemployment compensation after exhausting compensation under a state program is a "matter within the jurisdiction of" the executive branch, making a false representation on a benefits application a federal crime.[244]

---

[238] Or. Rev. Stat. § 411.990(1), (2).
[239] *See, e.g.,* United States v. Davis, 8 F.3d 923, 929 (2d Cir. 1993); United States v. Shafer, 199 F.3d 826, 829 (6th Cir. 1999); United States v. Herring, 916 F.2d 1543, 1547 (11th Cir. 1990).
[241] United States v. Rodgers, 466 U.S. 475, 479 (1984).
[243] United States v. Facchini, 874 F.2d 638, 641 (9th Cir. 1989).
[244] *Facchini*, 874 F.2d at 640.

If Mouktabis was held in contempt for his failure to make payments or transfer property, true disclosure of his assets might assist enforcement of those obligations against him, but the disclosure would not incriminate him. On the other hand, if he had defended the contempt motion by falsely testifying to financial inability to comply, disclosure now of the truth could be the basis for someone to contend that he previously perjured himself or committed criminal contempt. In other words, for him to demonstrate that answering Huffman's questions could incriminate him for failure to pay or transfer property, he must show not only that he has been ordered to pay or transfer but also that he has been accused, or could be accused, of failing to pay or transfer and that truthful answers to one or more specific questions would be relevant to, and could be used against him in, a prosecution for failure to pay or transfer or for criminal contempt. And to demonstrate that answering could incriminate him for unlawfully obtaining public assistance, he must separately show not only that he has obtained public benefits but also that he has been accused, or could be accused, of obtaining the benefits unlawfully and that truthful answers to one or more specific questions would be relevant to, and could be used against him in, a prosecution for doing so. He has not yet satisfied those burdens.

***(a) I will allow Mouktabis to supplement his response to the motion to compel to support his privilege claims as to the questions I have***

***found do not facially call for answers that are potentially incriminatory.***

Ordinarily, when disputes over oral questioning of a witness arise in a nontrial setting, such as at a deposition or examination ordered under Federal Rule of Bankruptcy Procedure 2004, the judge has the discretion to order the parties to continue the examination before the judge, so the judge can resolve disputes as they arise. If the disputes are over the witness's assertion of the privilege against self-incrimination and the judge decides that the question is innocuous, the judge can give the witness—especially one who is self-represented—the opportunity to make the required "positive disclosure . . . of [the question's] hidden dangers."[245] But here, the challenged privilege invocations occurred at the meeting of creditors, and for me to preside over the continued meeting-of-creditors examination of Mouktabis would constitute my presiding at or attending the meeting, which the law does not permit.[246]

Considering the significance of an overruling of a Fifth Amendment privilege claim, especially by a self-represented litigant, I will give Mouktabis the same opportunity to supplement his privilege claim that he would have had had the examination not been in the meeting of creditors. To do so, I will allow him 30 days to supplement his opposition to the motion to compel, supported by an affidavit or declaration under 28 U.S.C. § 1746, and if he

[245] *Hashagen*, 283 F.2d at 350.
[246] 11 U.S.C. § 341(c).

does so, I will set a hearing to allow argument on the supplemented privilege claim. He may include in his supplement a renewed request that I consider evidence *in camera*.

### ***E. I will partially stay the order on this decision.***

At Mouktabis's request, I will stay the order on this decision, except the 30-day deadline discussed in part VII.D.5(a) above, for 14 days.

## VIII. Conclusion

I will prepare a separate order, so none need be lodged.

###

cc: Nour Eddine Mouktabis